UNITED STATES *ex rel.* HILL *v.* CAPE GIRARDEAU CO.[*]

(*Circuit Court, E. D. Missouri.* June 9, 1883.)

PRACTICE—MANDAMUS—SUPERSEDEAS.

 Where a judgment had been recovered against a county upon coupons which it had issued, and a peremptory writ of *mandamus* had been granted, commanding the county court of said county to pay the party who had recovered said judgment a certain proportion of a fund in the county treasury which had been collected for the purpose of paying such coupons as the relator had recovered upon, and also commanding the levy and collection of a tax with which to pay any balance remaining due upon said judgment after the application of said proportion of said fund to its payment; and where the respondent had appealed from the order of the court granting such peremptory writ, and had filed an appeal bond, and a *supersedeas* had been granted staying further proceedings under said writ, and the judgment creditor filed a new information entirely ignoring the previous *mandamus* proceedings in the case, and asking for an alternative writ of *mandamus* commanding said county court to pay him on account of said judgment a certain sum alleged to be in the treasury of said county, and to levy and collect a tax sufficient to pay the balance remaining due upon said judgment after said fund had been applied thereon,—*held*, that an alternative writ should be allowed.

Information for an Alternative Writ of *Mandamus*.

On the seventh of April, 1881, John T. Hill, the relator herein, obtained a judgment against Cape Girardeau county for $6,659.80,

*Reported by B. F. Rex, Esq., of the St. Louis bar.

and on May 3, 1882, the Ninth National Bank of New York city and Elisha Foote each obtained a judgment against the same party for $4,609.28 and $2,070.72, respectively. All of the judgments were upon coupons detached from county bonds of said county, and all of the judgment creditors were represented by the same attorney. At the time the judgments were obtained there was a fund in the county treasury of Cape Girardeau county sufficient to pay about 64 per cent. on them, if applied, *pro rata*. The fund had been collected for the purpose of paying said coupons. The county court having refused to pay any part of said judgments, an information for an alternative writ of *mandamus* was filed in each of the cases, alleging the existence of said fund in the treasury of said county, and asking for orders to compel the county court to pay said fund to said judgment creditors, and to levy a tax sufficient to pay any balance remaining due upon their judgments after said fund had been applied upon them. The county court did not pay said fund to said creditors, nor did they levy any tax, but filed returns giving reasons why they should not be compelled to do so. These returns were demurred to, and the demurrers were sustained. Thereupon said judgment creditors moved the court to issue peremptory writs of *mandamus* in said cases, and on the fourteenth of November, 1882, peremptory writs were issued, by which said county court was "commanded forthwith to cause to be paid to said relators, or to John B. Henderson, their attorney of record, whatever amount of money may now be and remaining in the treasury of [your] said county to the credit of said township of Cape Girardeau applicable to the payment of the judgments heretofore recorded herein; said amount being whatever sum has not been heretofore paid on judgments and writs thereunder, *pro rata,* rendered upon coupons for which taxes have been collected for the coupons due, of the same year, which said judgments and writs, if any, other than the relator's herein, unless of equal date herewith, are to be excluded in said *pro rata* computation." An appeal was taken to the supreme court of the United States from the order of the court granting a *mandamus* in the case of the relator, and an appeal bond in the sum of $1,000 having been filed, a *supersedeas* was granted by the court staying all further proceedings under said writ in the case of said Hill. The peremptory writ was duly served and a return made, which need not be here set forth. Subsequently, this information was filed by the relator herein. The information entirely ignores all previous *mandamus* proceedings in the case; states the amount of the relator's judgment; that it remains unpaid; that there is $5,000 in

the county treasury of Cape Girardeau county, collected for the purpose of paying the coupons sued on, and asks for a *mandamus* directed to the county court of Cape Girardeau county and to the justices thereof, commanding them to pay the plaintiff, or his attorney of record, the said sum to the credit of said judgment, or as much of said sum as remains in the treasury; and if any balance remain due and unpaid on said judgment, interest, and costs, after the payment of said sum, he asks that the said court be ordered to levy a tax for the purpose of paying such balance. The amount alleged to be in the treasury by this information differs from the amount mentioned by the previous information. The respondents objected to an alternative writ being granted, on the ground that all further proceedings had been stayed by said appeal and *supersedeas*.

*J. B. Henderson* and *James M. Lewis*, for relator. *Henry Cunningham*, for respondent.

TREAT, J. If the information had stated fully what the records of the court show, the question to be determined could have been raised on demurrer. True, the court is supposed to know by its record what has been done in a case before it, wherein supplemental or ancillary proceedings are sought; yet no intelligent review of its action could be had, if its judgment were based on records not brought forward or referred to in the ancillary pleadings. It is important that the grave propositions underlying the motion for this alternative writ should be clearly disclosed, and to do so an answer is needed.

When the answer appears, it may be that this court, if it feels at liberty to pass upon the questions *de novo*, will have to review the whole subject involved. It is not proper, at this stage of the inquiry, to discuss those questions. The alternative writ is allowed, in order that the whole subject, in its legal aspect, may be fairly before the court in a way for the final review, if desired, by the United States supreme court.

Let the writ go.